# Elizabeth Eyster and Abraham Kagey *against* John Young.

Though a will of land must be proved regularly by two witnesses, yet circumstances may supply the want of one witness, where they go directly to the immediate act of disposition.

FEIGNED issue to try the validity of the last will of Daniel Eyster.   The facts were as follow :

The deceased being much indisposed, sent for Jacob Rudisill, esq. one of the judges of the Court of Common Pleas of York county, to draw his will.   He received his instructions at his bed side, in the presence of Jacob Kagey and Dr. Christian Messing ; and as he swore, made short memorandums of them in writing, which he read and explained to him, and asked him if he was satisfied therewith as his will ; to which he replied in the affirmative.   The decedent was in his perfect senses, though in pain, which however was not continual ; he was at no loss with respect to his directions, and seemed to have thought of his will before, which was remarked at the time, Rudisill went into another room with Kagey, where a formal will was drawn up, and given to Kagey to peruse.   Eyster getting worse, the will was finished in haste, and was read to him till within three lines of the bottom of the first page, with which he declared his satisfaction.   The reading was then continued till the scrivener came to the middle part of the second page, when he observed his eyes to stare, in a fixed position, and thought his last moments approaching.   He died within an hour afterwards.   The rough memorandums were sworn to be in the same state, as when received and entered from the mouth of Eyster.

The deposition of Jacob Kagey was taken before the register on the caveat, though but imperfectly, and confirmed the substantial parts of Rudisill's testimony, but he was not so minute. He was since dead.   He heard some of the directions given by the decedent though not all, as he spoke in a low voice.   They were written down in his presence, and were all read and explained to Eyster ; the greater part at least, were explained to him, when he was in his senses.   After the will was reduced into form, a part of the first page was read to him, to which he gave his assent, and then his understanding left him.

He was asked no questions, as to the identifying the minutes, though they were filed in the office.

*Christian Messing attended the decedent in a medical   [*512 character, and was in the room all the time, as he thought, when he gave the directions, which were committed to writing, and read to him afterwards.   He said they were all right.   After

3 YEATES—30

[Eyster et al. *v.* Young.]

the will had been prepared, it was read partly to him and he agreed to it. He then got worse and spoke no more. The witness believed, that the memorandums produced were those taken at the time from the instructions of Eyster.

These notes differed in some degree from the formal instru· ment. The latter was more copious and full than the former, and contained some clauses which Mr. Rudisill had trusted to his memory.

Three issues were joined :

1st. Whether the original notes were the last will of the decedent ?

2d. Whether the formal instrument was his will ?

3d. Whether both papers taken together were his will.

The defendant's counsel insisted on four objections :

1st. That the instructions were no will, because ambulatory.

2d. They were not sufficiently explicit, as to all the property.

3d. Publication was wanting to them.

4th. They were proved by one witness only.

1. The *animus testandi* must be collected from the instrument, otherwise the law will not consider it as a will. 1 Fonbla. 159. These minutes were a mere draught to govern the scrivener, in drawing his true will, and were not intended to operate as his testament. They were subject to alteration. A writing prepared for a draught of the testator's will only, or for a more ready direction of the testator whereby to make his testament afterwards, is not to be accounted a testament. Swinb. 521, part 7, sect. 13.

2. The minutes do not comprehend all the estate. They are but imperfect notes. Swinb. 522.

3. Publication is in the eye of the law, an essential part of the execution of a will, and not a mere matter of form. Pow. Dev. 81. 8 Vin. Ab. 119, pl. 16.

4. In the language of the late C. J. it would be dangerous indeed, were the idea tolerated for a moment, that any individual could alone prove the validity of the will, which he had written. 1 Dall. 288, Lewis *v.* Maris. By that case, it is fully settled, that the true meaning of the act of assembly of 1705 is, that the will shall be proved by two or more credible witnesses, and nothing short of it will do. It never could be designed, that greater solemnity should be observed in a verbal testament, or *in repealing than in making a last will and testament; and the law of 1705 requires the testimony of two or more witnesses to the probate of a *nuncupative* will, and also to the revocation of a will. Ib. 1 Ves. jr. 13.

*513]

It is acknowledged that Mr. Rudisill is a complete witness to prove the original notes, and is superior to all exception. But where is the second witness ? Kagey does not indentify the memorandums, nor assert that all the clauses of the will were explained to the decedent. Messing barely believes he was in

the chamber all the time of taking the memorandums, but his professional character must have led his mind to other subjects than making the will, if his belief on the other head is correct. He barely gives his belief as to the identity of the memorandums. The formal instrument cannot possibly be established. It varies in two material instances from the instructions, and therefore cannot stand. Besides it is not proved by two witnesses with any degree of precision, how much of the first page was read to Eyster. The rules of property must be fixed on a solid certain basis. They also cited Pow. Dev. 30.

The plaintiff's counsel answered, that devises of land pursuant to the statutes of 32d and 34th Hen. 8, had been frequently established in Pennsylvania, though the settled rule is, that they must be proved by witnesses, or an equivalent. If the intent of the donor be to make a will, the instrument will operate as such, though it be delivered as a deed. Pow. on Dev. 14. Where one sheet of a will was found in one county, and another in a different county, both sheets made but one will. Ib. 15. It is true, every devise of lands must be entirely in writing ; but a bare letter directing how a man's lands should go after his death, has been held a good will. Ib. 25. So where a lawyer took notes of a man's will from his mouth, and wrote the will in legal form one hour before his death, this was established as a good will in writing, though the testator did not hear the will read. Ib. 26. This goes the whole length of the present case, as to the formal instrument. It has been resolved, that it is not necessary that a will devising real estate in this commonwealth, should be sealed, nor that all the subscribing witnesses should prove the execution, nor that the proof of the will should be made by those who subscribed as witnesses, nor that the will should be subscribed by the witnesses.

Here then we have a proof of the original notes by three witnesses. It is not similiar to Lewis *v*. Maris so much relied on. There John Evans alone proved any instructions to have been given in respect of the legacy of 400l. 1 Dall. 279. It is true, *that the deposition of Kagey has not been taken with due correctness, but it cannot be denied, that he referred [*514 expressly to the notes then lying before the register. If he did not hear all the clauses explained to the decedent, he deposes that he heard them all read, which is sufficient. But if there is any deficiency in this written testimony it is amply supplied by Messing. He swears to the directions ; the reducing them to writing ; the reading of them ; the preparation of the formal will, and the part reading thereof. His profession would naturally lead him to continue in the room, to watch the symptoms of his patient and administer relief, as events might occur. Mr. Rudisill is admitted to be a complete witness.

The formal instrument is more copious and full than the notes, but we cannot discover the two material variations insist-

ed on.   But if it had varied ever so essentially, and the whole had been read distinctly to Eyster, who in his perfect senses had assented thereto, and the same had been proved by two witnesses, there can be no doubt but it would be sanctioned as his will. Whether there is any material variance between the two writings will be judged of by the court and jury.

By THE COURT.   The three first objections made by the defendant's counsel are readily disposed of.

That written declarations of a man's mind how his estate shall go after his death, made *animo testandi*, may amount to a will, when duly proved, cannot be doubted.   If they are not sufficiently copious to embrace his whole estate, the consequence would be, that he dies intestate *quoad hoc*, and the same exception would lie to any will duly executed and attested, which did not contain a full disposition.   Nor can there be any difficulty on the point of publication.   The law requires no particular form of publication.   Pow. on Dev. 81.   It may be inferred from circumstances, and will have the same force to render the instrument valid, as if expressed by parol declaration.   Ib. 82.

The only doubt that can arise, is, whether there are two witnesses to prove the written instruments set up, or either of them.   Judge Rudisill is admitted to be one full complete witness.   Kagey proves the most material circumstances related by the former in detail, and all the papers must necessarily have been before the register, when his deposition was taken on the caveat.   Were it necessary, Dr. Messing would supply the place of one witness.

It cannot be pretended, that to establish a will, two witnesses must swear, that they were present and saw it executed.   Suppose the subscribing witnesses are dead, or that one of them is *515] *dead, their hand writing may be proved.   So in England, where three witnesses are indispensably necessary to a devise of lands, by the statute of frauds and perjuries.   Again, suppose a will here written by the testator himself, may not his hand be proved by two witnesses ?   We hold moreover, that circumstances may supply the want of one witness, where they directly go to the immediate act of disposition.   Analogous hereto was the case of Chamber's lessee *v.* Weaver, tried at Nisi Prius at Carlisle, before the late Chief Justice, for the specific execution of an agreement made with the late proprietary, Thomas Penn. There the rule in chancery was admitted, that if the fact on which the equity of a bill arises, is denied by the answer, and the equity is proved but by one witness for the plaintiff, he can never have a decree, if it rests on the oath of the defendant against one witness, and *no more.*   The court compared the case of a defendant in ejectment to a defendant in chancery ; but declared, that in both instances, the proof would be complete, if one witness swore to the fact directly, and a variety of circumstances were adduced from which the same fact would naturally be in-

ferred. Here the instructions are most to be relied on, as taken immediately from the mouth of Eyster. The formal writing differs from it in some degree. Two writings made immediately after each other, with different dispositions, cannot stand together as the last will of the testator, and the formal instrument must give way to the notes, under the circumstances of this case. We think the latter sufficiently proved under our act of assembly.

　　　　　　　　The jury found their verdict accordingly.

　　Messrs. Hopkins and W. Ross, *pro quer.*

　　Messrs. Duncan and Bowie, *pro def.*

Cited in 6 S. & R. 455; 16 S. & R. 86; 1 Watts 463; 8 W. & S. 295.