The opinion of the court was delivered by
Gibson, C. J.
Whether the evidence of Emanuel Reynolds might have been left to the jury, had the act of assembly permitted the proof of execution to stand on the testimony of but one witness, is the only question that was proper for the decision of the court. Circumstances tending to lessen his credit were exclusively for the jury; it being sufficient, if they might have found the is *85 sue on his testimony as an integral part of the proof required by the act of assembly. The word “ credible” in the English statute of frauds, has, after a long contest, been determined to mean “ competent;” and here the evidence of a witness, which, if believed, goes the length of full proof, is surely competent under our statute. Now the witness deposed to acts, which, if actually done, were in all reason a publication of the paper as the last will and testament of the party. Nor do I think it material that these acts had relation to an adoption of the paper only at the time of the transaction. Publication before all the witnesses at the same time, or at all, is not necessary to the validity of a will, which may be . kept'secret by the testator during his life and proved by witnesses who may not have seen it before they are called to depose. Nor do I think the form of acknowledgment deposed to by the witness, is inconsistent with the alleged fact of a prior adoption of the paper as the last will and testament of the party. It is just such an acknowledgment as one might expect to be made before each of several witnesses called at different times. But I concur that there is nothing in the evidence of the other witnesses to show that the declarations of the deceased were made in reference to this particular paper, of .which there is no account» given by any one but Emanuel Reynolds. The proof of authentication, therefore, rested on the evidence of but one witness, and for that reason I concur that the judgment be affirmed.
Duncan, J.
I agree that the judgment be affirmed; but I think Emanuel Reynolds was a legal competent witness, and his evidence was proper and legal evidence by one witness, his credit to be judged by the jury; but I do not think that the want of another witness was supplied by the facts and circumstances stated by Mary Sergeant and Samuel Lea. These facts and circumstances do not go to prove the identical paper proved by Emanuel Reynolds. If they had.tended to prove that paper; if there were circumstances from which the jury might have inferred that, the fact of execution proved by two witnesses should have been left to the jury. But there was only one witness to prove the will, and it was for the court to instruct the jury that the will was proved not by two witnesses. The legality of the execution was a question of law.
Rogers, J.
The act of 1705, entitled, “An act concerning the probate of written and nuncupative «'ills, and for confirming claims of land,” makes two things indispensable: 1st, That the will be in writing; and, 2dly, that it be proved by two credible witnesses.
When the will is in the handwriting of the testator, signed and sealed by him, there is generally, but little difficulty as respects the execution. I do not speak of those informal instruments which are usually intended as mere memoranda of a will afterwards to be put into form.
*86 Before entering into a particular examination of this case, it may be useful to bring into view some of the decisions which have been made on the act of 1705.
As early as the year 1793, it was decided, that in all cases of dispute upon the fact of execution or the sanity of the testator, the Register’s Court may send an issue into the Court of Common Pleas, to have the facts tried by a jury, even without the request of either party;, but when the dispute is about the legality of the execution, the court is the proper tribunal. 1 Smith, 40.
That the legal execution of the will is a question of law, is also decided in the case of Lewis v. Lewis, 6 Serg. & Rawle, 489.
The authentication of a will, by the requisite number of witnesses, is matter of law, for the determination of the court; the sanity of the testator, and all questions of fraud, belong to the jury. And when these questions were confounded by the court, it was held to be error.
It has also been held in the case of Eyster v. Young, that when there is a complete witness, one superior to all exceptions, that circumstances may supply the want of one witness, when they go directly to the immediate act of disposition. 3 Yeates, 511.
Considering this as a matter of law, was the execution of this paper, purporting to be the will of Jacob Reynolds, proved by two credible witnesses?
The witnesses in proof of the execution of the will, are, Emanuel Reynolds, who is said to be one witness, and Mary Sergeant, and Samuel Lea, who together, constitute another witness.
First, then, is Emanuel Reynolds a complete witness, superior to all exceptions, so as to permit the proof of circumstances to supply the place of one witness?
Emanuel Reynolds is the father of the two only devisees, in the instrument of writing sought to be established as the will of Jacob Reynolds. He comes forward under circumstances of great suspicion, which an examination of his testimony must clearly show. Can such a man be considered as a complete witness, superior to all exceptions, within the meaning of the court, in the case of Eyster v. Young? Permitting circumstances to supply the place of one witness, is a relaxation of the salutary rule prescribed by the act, which I, for one, may be allowed to regret, but taken with the qualifications that one witness must be a complete witness, superior to all exceptions, there is the less danger in it. This, however, would be for the jury, under'the direction of the court.
Loose constructions of the statute of wills afford facilities to de-' signing persons, to practise on the weakness of men, on the bed of sickness, or of forging instruments and supporting them by perjury, when the lips of the parties are closed for ever. And it was this, that induced the legislature in England, to interpose additional grounds for the protection of these last and most interesting *87 dispositions of property by the passage of the statute of 29 Car. 2. c. 3. Roberts on Wills, 18.
In granting the right to dispose of property after death, the legislature, at the same time, guarded it against abuse, by making two credible witnesses absolutely necessary. And there is the less reason to relax the rule from the circumstance of the equal and just distribution of the estate of deceased persons, under the intestate laws of Pennsylvania.
This paper is not in the handwriting of Jacob Reynolds,,the deceased, nor is it authenticated by his signature, nor is there proof by two persons, who were present when he gave the instructions for the drawing of his will.
Emanuel Reynolds testifies, that in the year 1821, about the 24th of December, Jacob came and requested him to write a few lines in the form of a will, for him. That he drew it, and in about a week took it to his brother, who read it over twice, looked very sober, and said, it was the very thing he wanted for some time; that lie had applied to some people, and could not have it done. That he heard no more of it, until some time in Jipril, when upon being sent for by his brother, he came, and that he seemed glad to see him, and told Eli, (the principal devisee,) to go to the chest and bring a paper. That Jacob took it in his hand, and opened it. That he put his hand down and said, “ Brother Emanuel, I call thee as a witness to this my will.” That Emanuel said he could not conveniently be a witness, and that others were sent for for that purpose, who did not come until Jacob was incapable of making a will.
If we believe Emanuel, he was not instructed to draw a will, but the mere form of a will, and Jacob upon its being presented said, “That is what I want.” It cannot with any degree of propriety be said, that this was considered by Jacob as his will until Jipril; for it is evident, that he intended it as the mere form of a will to be authenticated by his signature, or by some acknowledgment in the presence of witnesses, or. by some other unequivocal act.
I do not, therefore, consider Emanuel as a complete witness, superior to all exceptions, within the true inteat and meaning of the case of Eyster v. Young. Unless this rule be rigidly adhered to, there will be great danger of imposture by the aid of perjury and corruption, when the will, as in this case, is not in the handwriting of the testator, nor authenticated by his signature. It was to guard the death-bed of such a man as Jacob Reynolds, that the act of assembly requires the will to be in writing, and to be proved ■ by two credible witnesses.
But, supposing Emanuel JReynolds to be a complete witness, superior to all exceptions, the next question, is whether there be another witness to the will, or the proof of such circumstances as amount to one witness.
*88 The rule which more immediately bears on this branch of the case, is distinctly laid down in Hawk v. Hawk, 6 Serg. & Rawle, 47.
The execution of a will must be proved by two witnesses, each of whom must separately depose to all facts necessary to complete the chain of evidence; so that if one witness only were required, the will would be fully proved by the evidence of either.
It is contended, that the necessary proof is furnished by the testimony of Mary Sergeant and Samuel Lea.
Mary Sergeant says, that Jacob told her, he had made his will, and'would not alter it for any one; he had left it (meaning his estate) to Eli and Hannah. He said he thought they had the best right to it; and he said he had got his .brother Emanuel to write his will.
Samuel Lea says, that he told Jacob he had brothers enough to leave his land'to. He said his brothers should be no heirs to his land. He had bought it himsélf and paid-for it, and would do as he pleased.' Said he had made a will, and willed it all to Emanuel Reynolds’ son Eli. He allowed Eli’s sister to have half of his personal estate. He allowed Eli to enjoy it as his own property.
The instrument to which this evidence is said to apply, is in the handwriting of Emanuel, and is not authenticated by the signature of Jacob. The only evidence of the instructions for the drawing the will, is from Emanuel, who is the only witness, that but one will was drawn. It is stated by him, he had his instructions for drawing the will signed by Jacob, which are not produced, nor is there any account given of them.
Strike out the testimony of Emanuel, according to the authority of Hawk v. Hawk, and what proof is there that the will produced by Emanuel, is the same that the witnesses speak of, or rather that Jacob referred to in speaking to Mary Sergeant and Samuel Leal As the proof of the execution of the will is matter of law for the court, it should not be left to inference or conjecture, but should in this particular .be positive and direct.
Mary Sergeant says, that Jacob said, he had made his'will, and had left his estate to Eli and Hannah.
By the will produced by Emanuel, the land is left to Eli, and the personal estate is divided between Eli and Hannah.
Samuel Lea says, that Jacob told him he had made his will, and willed his land to Emanuel’s son Eli, and that he allowed Eli’s sister to have the half of his personal estate.
He does not state who was to have the other half of the personal estate, nor do we certainly know, from his evidence, which sister was meant, and we can conjecture which, only from the circumstance, that at the time they were speaking, Hannah looked out of the door.
Except from Emanuel himself, we have no evidence but that *89 he may have drawn more than one will for his brother Jacob, to which the testimony of Mary Sergeant and Samuel Lea, would more accurately apply.
Upon the whole case, I am of opinion, that the testimony of Mary Sergeant and Samuel Lea, do not amount to one witness, within the meaning of the act of 1705.
Huston, J., was absent in consequence of indisposition.
Judgment affirmed.