[PHILADELPHIA, APRIL 16, 1835.]

, CLARK *against* MORTON.

| 5r | 235 |
| f221 | 108 |

IN ERROR.

The making of a will in writing, and its contents cannot be established by evidence of the verbal declarations of the deceased, going to show that he had made a will in writing, and how he had disposed of his estate by it, in the absence of the *corpus* of the will, and of all evidence that it had been seen by the witness.

This was a writ of error to the Common Pleas of Philadelphia county.

It was a feigned issue to try the validity of an alleged will of the late Judge MORTON, brought against *Clark* and wife, his wife claiming to be heir at law of Judge MORTON.

A witness having testified that Judge MORTON had told him he had written his will himself; the plaintiff proposed to ask the contents of the will as stated to the witness.

This was objected to by the defendant: but the court admitted the testimony; whereupon the defendant tendered a bill of exceptions.

The court charged the jury, that " by the law of Pennsylvania, the execution of a last will must be proved by two witnesses. But after its legal execution is so proved, its contents in a case when it is necessary to show them otherwise than by the adduction of the instrument itself, may be established by one witness. Thus where a will is shown to have been lost by accident, or suppressed and spoliated by fraud; then after the existence and execution of the paper, as a will are proved by two witnesses, one witness, conversant with its contents, would be adequate to prove them.

" In the case before us the plaintiffs who set up the alleged written will, have neither produced the instrument itself, nor two or more witnesses who have seen the *corpus* of the will, and can thus establish its existence and execution; which latter it is insisted they must do, even if the non-production of the will is proved to be the result of the fraudulent spoliation and destruction of it. It is as distinctly denied by the defendants, that the existence, execution and contents

(Clark v. Morton.)

of a will in writing can be proved by the declarations of the testator made before his death, even where such declarations are offered for these purposes, against a party, charged directly with fraudulently spoliating and destroying the written will.   This is an alarming doctrine if correct, and could not fail to produce dangerous results; leaving to the instrument most likely to be spoliated the least amount of protection.

" The doctrine considered by the court as soundest in the case before you, may be thus stated.   If you are satisfied from the testimony of two witnesses, proving the repeated declarations of Judge MORTON to that effect, that he had made and executed his last will and testament in writing; and if you are satisfied from the evidence in the cause, that the will so executed, continued in existence until · after his death, when it was fraudulently spoliated and destroyed by the defendants; and if you are satisfied from the evidence, that the contents of the will so legally executed, and fraudulently destroyed by the defendants, are such as have been represented by the plaintiffs, then your verdict should be in their favour—otherwise the verdict must be for the defendants.   Fraudulent spoliation of a will is *never* presumed by the law.   When a will shown to have been executed is not found at the death of the supposed testator, the presumption of law always is that it has been destroyed by the testator himself.   Spoliation is to be proved by the party averring it; but like any other fraud, it may be shown by circumstantial evidence.

" It is not the intention of the court to withdraw any of the facts of this cause from your decision; of these you are the sole and exclusive judges."

The defendant excepted to the charge of the court.

*D. P. Brown* and *Broom*, for the plaintiff in error.

1. The declarations of the testator, that he had made a will, and of the contents thereof were inadmissible.

The existence of a legal will must be proved, before evidence can be given of its contents.   Proof of contents being secondary, it must be first shown that the will had legal existence, and its non-production accounted for.   Proof of contents cannot have greater effect than the writing itself if produced.   No writing purporting to be a will, can be admitted as such until its execution is proved by two witnesses.   A will produced with no other proof than the declaration of the testator, that he had made a will, and his declaration of the contents could not be admitted in evidence.   There must be the testimony of witnesses identifying the *paper* containing the will—and showing that it was written before the testator's death : some one living must prove these facts; declarations of a deceased person are not sufficient.   The testator has no right to devise, but in the manner prescribed by law—and his declarations

(Clark *v.* Morton.)

cannot be taken in violation of the law, or to impair the rights which the law gives to his heirs. If the will could not be received in evidence, the contents could not; for the contents capable of proof can only be of a legally executed will. The contents of a paper not a legal will, cannot be evidence to establish a will. The only proof offered here, was of the declarations of the testator, for no witness ever saw a word written on any paper purporting to be, or shown, or said to be, a will. These declarations cannot supply the want of writing, for the avowed intent of the act was to guard against the danger of them—the.act of 1705, requires wills of lands to be in writing, and the *writing* to be proved by two witnesses. The writing is the only evidence allowed of the will of the testator, except in case of loss, when proof of its contents may be allowed. Nevertheless, the proof of the execution is never dispensed with. The contents of the writing, after it is duly proved, can only be learned by the production of the *corpus* or by a witness who saw it, and remembers the contents. The oath of a witness of what another said is inadmissible.

To constitute a valid will for the disposition of real estate, it is necessary that it should be reduced to writing, in the lifetime of the testator, and proved by two witnesses. *Rossetter* v. *Simmons*, 6 *Serg. & Rawle*, 452. " If there be two witnesses which did see and read the testament written and do remember the contents thereof, it is sufficient." *Swinburn on Wills*, 450. There must be one witness superior to all exception, and circumstances going to show the identical paper proved by the witness. *Reynolds* v. *Reynolds*, 16 *Serg. & Rawle*, 82. Here was no paper containing a will identified by any witness, nor any circumstance going to show the identity of any such paper. If a will of lands be lost, or secreted, parol proof of its contents by one witness will be sufficient, the proof of the execution being made by the requisite number. *Lewis* v. *Lewis*, 6 *Serg. & Rawle*, 497. The proof of execution by the requisite number, is therefore precedent to that of the contents. The question excepted to, should 'not therefore have been allowed by the court below, the primary proof not being made.

2. The charge of the court is erroneous. Many of the remarks already made, apply in principle to the charge. The court should have instructed the jury that the facts proved, if believed by them, did not amount to legal proof of the execution of the will.

The legal execution of a will in writing, is a matter of law, entirely for the court. *Lewis* v. *Lewis*, 6 *Serg. & Rawle*, 497. It was for the court to instruct the jury, that the will was not proved by two witnesses. *Reynolds* v. *Reynolds*, 16 *Serg. & Rawle*, 85. It should not have been left to the jury to draw possible inferences and conclusions from facts indubitably proved. *Hock* v. *Hock*, 6 *Serg. & Rawle*, 48. When therefore taking all the facts offered in evidence by the plaintiffs, to be true, they did not amount to legal

proof of the will, there was no question for the jury. But instead of this, the court laid down the doctrine to be—

1st. That if the jury believed from the repeated declarations of the testator, that he had made and executed his will;

2nd. That it was spoliated after his death by the defendants;

3rd. That the contents were as represented by the plaintiffs—

They should find for the plaintiffs.

Now if the declarations of the testator could not make a will of lands, then the jury's belief in the truth of these declarations could not justify a finding for the plaintiffs. Or if the contents could be proved only by some one who saw them, the belief in the testator's declarations, will not justify a finding for the plaintiffs. And the court should have instructed the jury, that the contents could only be proved on oath, &c. by those who have read and remember them. 4 *Burn Ec. Law,* 253; *Swinburn on Wills,* 450. The first and third positions of the court rest on the testator's declarations alone; the second, concerns the spoliation.

Spoliation assumes the fact of the existence of a will, and was improper for the consideration of the jury until existence were proved. The effect on the jury is obvious.

The heir at law is found in possession of the estate and effects of the ancestor. He has the opportunity to destroy the will, and is supposed not to be too good for it; therefore it is presumed that he destroyed it; and then it is presumed there was a will or he could not have spoliated it; and then that the will was duly executed, or he would not have spoliated it; and thus a will is established without the proof by any witness who saw it, but by the loose declaration of a testator which the law attaches no importance to, and perjury is invited and encouraged while heirs are discountenanced and inheritances endangered.

*Meredith* and *Williams* who argued for the defendants in error, observed that the fact of spoliation having been entirely left to the jury upon the evidence before them, it was clearly established by their verdict and must be so taken in this court. That in regard to the nature of the evidence in such a case, the rule is as stated by Lord HARDWICKE in *Cookes* v. *Hillier,* 1 *Ves.* 235, that when deeds or writings are destroyed by a party who would take the benefit thereof, a court of equity *in odium spoliatoris* will go further than a court of law. To show how far equity has gone in admitting and acting on this rule, they cited and commented on the following cases. *Dalton* v. *Coatsworth,* 1 *Peere Wms.* 731, and the cases there cited. *Woodroffe* v. *Woodroffe,* 1 *Dick,* 32. *Bowles* v. *Stewart,* 1 *Sch. & Lef.* 222. Our courts acting on equity principles will adopt the same rule and allow to go to the jury the same testimony on which a chancellor would found a decree. All the circumstances from which fraud is to be presumed are to be laid before the

(Clark *v.* Morton.)

jury, who are the sole judges of the weight of the presumptions and alone competent to draw the conclusions. *Havard* v. *Davis,* 2 *Binn,* 427. · The decisions under the act of 1705 have gone the full extent of the decisions in England. *Per* DUNCAN J., *Resseller* v. *Simmons,* 6 *Serg. & Rawle,* 455.

Then as to the errors assigned.

1. The declarations were evidence. This is the case of a will suppressed or spoliated by the heir, written by the testator himself and not submitted for examination to any one. The very case therefore supposes the will either *destroyed* or in possession of the interested party, and is clearly one for secondary evidence. What is publication or re-publication but declarations? Every thing in the nature of proof is merely evidence of intention, and what better evidence of intention than the declarations of the party himself. In *Walmesley* v. *Read,* 1 *Yeates,* 90, the testator's declarations to *Ridge* that he had given instructions to *Livesy* were received, and yet witness never saw the will, nor heard its contents read, and only knew of them from the testator himself.

In *Hock* v. *Hock,* 6 *Serg. & Rawle,* 47, the testator did not mention to the witness the contents of the will. It is no authority that such evidence of declarations of the testator would not be received: but only shows that the want of them lost the cause. Revocation of a will must be with the same solemnities as the execution, yet evidence of revocation by acts explained by declarations is constantly received. *Boudinot* v. *Bradford,* 2 *Dall.* 266. *Lawson* v. *Morrison, id.* 286. *Havard* v. *Davis,* 2 *Binn.* 406. *Eysler* v. *Young,* 3 *Yeates* 511. *Rosetter* v. *Simmons,* 6 *Serg. & Rawle,* 456. *Burns* v. *Burns,* 4 *id.* 298. *Reynolds* v. *Reynolds,* 16 *id.* 82. *Trevelyan* v. *Trevelyan,* 1 *Eng. Eccl. Rep.* 64. *Davis* v. *Davis,* 2 *id.* 278. *Forster* v. *Forster,* 2 *id.* 182, were cited as cases in which declarations were received as to existence and contents of the wills without objections.

Again, the declarations of the testator were evidence and ought to have been received. The testator is a party and his declarations bind those who come in under him. *Nelson* v. *Oldfield,* 2 *Vern.* 76. *Lightner* v. *Wike,* 4 *Serg. & Rawle,* 206. *Spangler* v. *Rambler,* 4 *Serg. & Rawle,* 193. So declarations in presence of testators are admissible on the question of capacity. *Irish* v. *Smith,* 8 *Serg. & Rawle,* 573, where the court held him to be a party so far as to be affected by what was said in his presence.

2. As to the charge of the court.

The will must be in writing. But the fact that it was in writing may be proved by one witness; the assent being proved by two. In *Walmsley* v. *Read,* none saw or knew of the writing but *Livesy;* and in *Hock* v. *Hock* if the will drawn by *Charrington* had been identified by a statement of the contents by *Rodernel* it would have

been sufficient. There is nothing in the act which requires proof of the continuance in existence of the will, until the testator's death. The cases show that any evidence sufficient to satisfy a jury, will authorise them to find that fact. *Burns* v. *Burns,* 4 *Serg. & Rawle,* 296.

As to proof of the contents of the will, one witness is fully sufficient. *Lewis* v. *Lewis,* 6 *Serg. & Rawle,* 489. And spoliation after the death is unquestionably a simple fact upon any evidence for the jury.

The charge then, leaving all these facts to the jury upon the evidence, was correct, and their finding is conclusive.

Have then the requisitions of the act in relation to *proof* of the will by two witnesses been complied with? In this case declarations were made in reference to a will which *Morton* had drawn himself which was in his possession, and which, if it had not been suppressed by the heir, would undoubtedly have been established. Under the decisions it is not necessary that a will should be sealed; that it should be proved by all the subscribing witnesses; that proof should be made by the subscribing witnesses at all: nor that any subscribing witnesses are necessary. *Walmsley* v. *Read* and *Rosetter* v. *Simmons,* show that all that is required is, that the *animus testandi,* the intentions of the testator, should be shown by two witnesses; and that evidence, whether by those witnesses or by others, of its being in writing should be produced. The intention is ascertained by the testator's declarations after, as in *Walmsley* v. *Read* ,or by his instructions before the writing of the will as in *Rossetter* v. *Simmons.* If a witness testifying to declarations connected with, or referring to a written will, though the witness never saw it, is a credible witness within the statute, then another proving the same facts must be a credible witness also: and two such are abundantly sufficient. Spoliation which is here found supposes as against the spoliator, that the will is in existence at and after the death. And this is an answer to the argument that we have not the *corpus,* the existence of the will. It is shown by the fact of spoliation.

The opinion of the court was delivered by

KENNEDY, J.—The main question to be resolved in this case is, whether the making of a will in writing and its contents can be established by parol evidence of the verbal declarations of the deceased, going to show that he had made a will in writing, and how he had disposed of his estate by it.

By our act of assembly of 1705, a will made in order to convey lands, must be in writing and proved by two or more credible witnesses. Now it is perfectly obvious that the proof required to be made of a will for such purpose, necessarily involves the proof of its actual existence. But can this, according to the true meaning of

(Clark *v.* Morton.)

the act of asssembly, be done, by giving parol evidence of the verbal declarations of the party alleged to be the testator, without producing the will itself; or proof being made that it had been seen, or that the party claiming in opposition to it, had admitted its existence? The design of the act in requiring the will to be in writing, and proved by two or more witnesses, was, as I conceive, first, to prevent hasty, inconsiderate declarations of the deceased from being set up for his last will: second, to secure certainty, and to provide against mistake or misapprehension of his intention; and, third, to protect all concerned against the establishment of wills by means of fraud and perjury; which would be effected with much greater facility, if writing and the production of it, were to be dispensed with. The circumstance of the will being written, and produced to speak for itself, furnishes strong evidence of deliberation on the part of the testator, and of a settled purpose to make the disposition of his estate therein contained, while it affords at the same time the best security that can be had, either against mistake, fraud or perjury; which otherwise might frequently prevent those taking to whom the law by its operation when left to itself, would have given the estate.

If however the verbal declarations made by a person before his death, stating that he had made his will in writing, and that he had thereby disposed of his estate in the manner then mentioned by him, are, after his death, upon proof being made by two credible witnesses of their having been uttered by him, to be taken for his will, without any proof of such writing having ever been seen, the great objects of the act of assembly will be defeated, and the actual writing of wills for the purpose of passing lands, as required by it, dispensed with. Because it is easy to perceive that a will disposing of the land of the deceased may be established by this means without a word, or even a syllable having been written for the purpose. It would be sufficient after his death to prove by two witnesses that they had heard him say before his death that he had made his will in writing and disposed of all his estate in a particular way, then mentioning how it was. In such case, if no written will in fact was ever made, it would of course be impossible to produce it; and then according to the doctrine contended for by the counsel for the defendants in error, the declarations of the deceased ought to be received, as the best evidence that could be had of the making of it, seeing none could be found. Now although we might, without knowing that the person making such declarations had, as many often have had, certain reasons for concealing, or perhaps for misleading those around them, in regard to the disposition that he wished to have made of his estate after his death, be inclined to think that his declarations in this behalf afforded some presumption of his having made a will in writing; yet as soon as it is ascertained that no such will can be found, this presumption I think entirely vanishes. Hence it appears to me then, that in the absence of the *corpus* of such will, and of all

evidence that it had ever been seen by a witness, the declarations of the deceased ought not to be admitted in evidence for the purpose of establishing it.

But the counsel for the defendants in error, in order to avoid this conclusion seem, in the first place, to consider the declarations of the deceased measurably in the light of admissions made by a party against his interest, which are always presumed to be true upon the ground that no man will say any thing in prejudice of his rights, unless it really be so; and therefore whatever he may say to that effect will be considered admissible evidence not only against himself, but likewise against all those claiming under him. In this however, I think there is a misapprehension, for whatever a man may say about his having or not having made his will, and the disposition that he wishes to be made of his estate after his death, it cannot in the least affect his right to it. He knows that if he has made his will it is ambulatory, and can have no efficacy in his lifetime; and that he has full power to revoke, alter or destroy it at any moment he pleases; and that if no will shall be found after his death, the presumption of law will be that, in the absence of evidence to the contrary, he destroyed it, after resolving to die intestate and to leave his estate to be disposed of by the operation of the law. Seeing then that the presumption of law will be that he has died intestate unless a will be produced after his death, he may be indifferent as to what he says in respect to it. He also knows, that although he may say that he has made no will, and that he is resolved to make none, yet if he has made one, or has not, that he has it in his power still to do so, and that upon its being produced and proved by two credible witnesses after his death, to have been duly executed by him in his lifetime, that his estate will pass and be disposed of according to it, notwithstanding all that he has said to the contrary. And hence Lord Erskine says, in *Pemberton* v. *Pemberton*, 13 *Ves.* 313, " loose declarations of a testator under circumstances imposing upon him no obligation of veracity, are nothing." Besides men are often unwilling for various reasons to have it known during their lives, how they wish and intend to have their estates disposed of after their deaths, and therefore with a view of concealing their real design in regard to it, declare sometimes differently from what they intend it shall be : so if a person has made a will, though he may say he has made none, he relies on the will being produced after his death to speak for itself; and after being proved by two credible witnesses, to testify what his real design was, and the disposition he wished to have made of his estate ; or if on the other hand, he has made no will, when he declares otherwise, he knows that none can be produced after his death, and that without it, the law will presume that he made none and therefore dispose of his estate as he intended it should be. Since then the declarations of a person in regard to his having made his will and disposed of his estate in a

(Clark *v.* Morton.)

particular way, or of his determination not to make a will can have no effect whatever upon his right to it, the reason which renders the admissions of a party admissible evidence against him and those claiming under him does not apply to this case; and as the deceased here was under no obligation to speak the truth when he made such loose declarations on the subject, I can perceive no principle of law that will make them evidence to supply the proof required by our act of assembly in order to establish the making of his will. If the declarations of the deceased were to be received as evidence for such purpose, it would necessarily follow for the same reason, that a written will produced after the death of one, who had made it, and proved in due form, might be revoked and set aside by proving that the testator had declared that he had revoked it in due form by a writing signed by him for that purpose, although no such writing could be produced, or evidence given, showing that it had ever been seen by any witness, which would, as it appears to me, be directly repugnant to the whole meaning, letter and spirit of the act of assembly, and would in short be making the mere verbal declarations of the deceased supply what the act has expressly declared must not only be in writing, but that the writing itself must be proved at least by two witnesses.

It has also been contended, and the court below seem to have advised the jury accordingly, that the declarations of the deceased made before his death, were at least evidence against a party charged with the destruction of the will, and say, "it would be alarming doctrine if the contrary were correct, and could not fail to produce dangerous results, leaving to the instrument most likely to be spoliated, the least amount of protection." Now it is impossible to avoid perceiving, if such a charge made by the person pretending to set up a will in his favour against the heir at law, be held a good ground for admitting the declarations of the deceased in evidence to prove that a will in writing was made by him in his lifetime, as well as the manner in which he disposed of his estate, that it will be putting it in the power of the party who claims the benefit of such declarations to make them evidence at his pleasure against the person entitled to the estate by descent, by alleging merely, without a scintilla of evidence to support it, that the latter has destroyed the will, and therefore it cannot be produced. This would in effect be fixing without even the shadow of proof to sustain it, a charge of a very serious nature upon the heir at law, and one that might and certainly ought, if true, to blast his reputation in the estimation of his fellow-citizens. What then could be more alarming than this, or more repugnant to the well known and established rule of law, that every man shall be presumed innocent until the contrary be proved.

It appears to me that the court below erred greatly in this particular; and the consequence of it would be, if not corrected, not only to deprive *Clark* and his wife of a valuable estate, to which

(Clark *v.* Morton.)

their right, without a will having been made by Judge MORTON disposing of it otherwise, is admitted to be indisputably good, but to fix a stain upon their characters by fastening upon them the charge of secretly and fraudulently destroying his will. And this, it seems to me, would be done too without the slightest colour of evidence to support it: for no will was ever seen in their possession, nor were they ever heard to admit that they had seen such thing themselves, much less to say that they had destroyed it, so that a verdict of the jury and judgment of the court, equivalent in effect to a conviction, were given against them upon mere suspicion and allegations, not even supported by oath. Had the proceeding been in a criminal form; for instance by indictment, for secretly and fraudulently destroying the will of Judge MORTON, I apprehend it would be difficult for any one acquainted with the rules of evidence and what would be requisite to sustain such an indictment in point of fact, supposing such a thing were by law indictable, to persuade himself for a moment that any evidence was given in this case, that could tend in the slightest degree to support the charge. Besides the declarations of the deceased, which I have shown are to be regarded as nothing, the only circumstances testified to by any witnesses which could excite even the least suspicion in the most jealous mind against the plaintiffs in error, were, that *Clark* and his wife, according to the testimony of Mrs. *Everly,* the mother of the defendants in error, went into the room about eight o'clock in the morning of the next day after the death of Judge MORTON, where two of the defendants in error, sons of the witness had lodged the preceding night, and where the papers of the deceased were, and under pretence of *Clark's* being sick, as she said, though other witnesses said they thought him really so, locked or fastened themselves up for several hours. That they denied having seen a will of the deceased; but Mrs. *Clark* said, if she had found or seen one, and it had cut her off, she would have felt herself justified in destroying it. And that, according to the testimony of *Chauncey Buck,* at a time when some unpleasant difference existed between *Clark* and his wife, and after witness had talked frequently to *Clark,* to let his wife, as he said, have more liberty, he (witness) remarked that he kept a guard over his wife. *Clark* was agitated and said, " she was an important witness," without saying as to what or any thing more. Now without any proof, as I shall show presently, that a will was ever seen by any witness, these were the only circumstances given in evidence, from which it is pretended that there was any ground for saying that the plaintiffs in error destroyed a will of the deceased. Possibly to the jealous, these trifles, which I think may be truly considered light as air, might appear to be proof of the fact, but it seems to me next to impossible that any disinterested and dispassionate mind could consider them sufficient to justify even a suspicion of its truth.

It has in the last place been argued, that admitting the declara-

(Clark *v.* Morton.)

tions of the deceased cannot be given in evidence to prove the making of his will and its contents, without proof being made that the body of the will itself was seen and known to exist by some one called as a witness, yet such proof was given in this case, by *Ann Drew*, a witness produced on behalf of the defendants in error, who testified that a considerable time before Judge Morton's death, " she held the light to him, when he picked up some papers and said, 'I would rather the mice had destroyed my money than the papers.' I then said the papers must be of value: he replied, 'not much, but what they might be replaced: it is *my will* and *papers.*' That they were in a roll with a piece of thread tied around them; she does not recollect the size of it, but the outside was white, and saw no writing on them." Now according to the testimony of this witness, she merely saw a roll of papers in the hand of Judge Morton, without a word of writing on them that she could discover. Giving then full credit to every word of her testimony, she saw nothing that had even the appearance of his will. At most she only proves that he had in his hand some white paper, upon which she saw no writing whatever. Her evidence would have been of quite as much force and effect to prove the existence of a will in writing, as it is, if she had testified merely that " he had told her, pointing to his desk in view at the time, that his will was tied up in a roll of papers in that desk," without his saying any thing more, or her seeing any paper at all; and therefore proves nothing beyond the declarations of the deceased, and is of the same character as the other testimony in this respect.

Several cases have been cited and referred to by the counsel for the defendants in error, to sustain, as well the decision of the court below in admitting the evidence of the declarations made by the deceased, for the purpose of showing that he had made a will in writing, and that it existed at the time of his death, as for supporting their charge afterwards to the jury on the effect of such evidence, if they should believe it. In none of these cases however, was the question raised which is presented here; and certainly not decided directly by the court. The writing purporting to be a will was either produced on the trial in each case, or shown by the positive and direct testimony of some one or more witnesses who had seen it, to be in existence at or shortly before the death of the testator; and where the latter was the case, sufficient cause was also shown for the non-production of the writing alleged to be a will. But as far as any thing is to be found in any of those cases bearing upon the question in this case, it is rather against than in favour of the defendants in error. Judge Brackenridge has indicated his opinion very clearly against them in *Havard* v. *Davis*, 2 *Binn.* 425, when in speaking of the evidence offered in that case, which were declarations of the testator, he says, " such evidence would seem to me to have been admissible; for it is not admitting *parol evidence of a will*, either as to the *making* of it, or as to the *contents* of it, but,

(Clark *v.* Morton.)

of a fraud alleged in the production of a writing as a will, which is not." Thus showing, most distinctly, that if such declarations had been offered as in this case, for the purpose of proving that a will was *made* by the testator and the contents of it, they would not in his opinion have been admissible evidence. And in *Reynolds* v. *Reynolds,* 16 *Serg. & Rawle,* 82, where a writing purporting to be a will was produced and proved by the brother of the deceased to have been written by him at the request and according to the direction of the deceased, somewhat more than three months before his death, who afterwards as late as the day of his death, called him, as he testified, to witness that it was his will; and that the writing there produced was the only will that he had ever written for the deceased, this court held, that proof of declarations made by the deceased, after the brother drew the writing for him and before his death, to other persons, telling them that he had gotten his brother, naming him, to write his will, did not amount to proof of the writing as a will, by a second witness according to the requisition of the act of assembly. Now it must be admitted, I think, that there is much less reason for holding that the proof made in the present case came up to what is required by the act, than the proof offered in *Reynolds* v. *Reynolds.*

The judgment is reversed and a *venire de novo* awarded.