# Michell v. Low et al., Appellants.

*Wills—Canceled will—Evidence—Probate—Execution—Contents of will—Subscribing witness.*

The contents of a lost will, or of a will which has been destroyed or canceled without the consent of the testator cannot be shown until its execution has been proved by the testimony of two witnesses.

The testimony of a subscribing witness to a will alleged to have been destroyed without the consent of the testator is insufficient to establish the execution of the will where the witness is unable to fix the year or the season of the year in which the will was made, and it appears that he did not read the will, nor hear it read, did not know who was appointed executor, and his testimony showed that a legacy was mentioned in the paper which he witnessed which was not in the paper offered for probate.

The testimony of a subscribing witness to a will alleged to have been destroyed without the consent of the testator, is insufficient to show the contents of the will, where it appears that the witness was a stenographer, that she had written a very large number of wills, that in no case, except the present, could she recall the contents of the instrument, that she had no data or written memoranda to refresh her memory, nor did she show any reason why she should have charged her memory with the different provisions of the will in suit, and it also appears that the witness was not corroborated by a single witness as to the alleged contents, and was contradicted as to other material points in the case.

Where it is sought to establish a will alleged to have been destroyed without the consent of the testator, the evidence must be positive and suffi-

cient to overcome both the presumption of revocation by the testator, and the presumption of innocence on the part of the third person charged with destroying the will.

Argued Nov. 1, 1905. Appeal, No. 168, Oct. T., 1905, by defendants, from judgment of C. P. No. 2, Allegheny Co., April T., 1905, No. 997, on verdict for plaintiff in case of Eliza Michell v. Mary A. Low et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Issue to try the validity of a will. Before YOUNG, J.
The facts are stated in the opinion of the Supreme Court.
Verdict and judgment for plaintiff. Defendants appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant.

*T. S. Brown,* with him *Wm. G. Stewart, F. W. Hughey* and *Alexander Gilfillan,* for appellants.—The burden is on the plaintiff to prove not only the execution of a will, but that it was destroyed by some person other than the testator, and not in his presence, or by his direction : Hock v. Hock, 6 S. & R. 47 ; Simrell's Est., 154 Pa. 604 ; McKenna v. McMichael, 189 Pa. 440 ; Deaves's Est., 140 Pa. 242 ; Foster's App., 87 Pa. 67 ; Wharram v. Wharram, 10 Jurist (N. S.), 499.

*H. H. Rowand,* with him *A. H. Rowand,* for appellee, cited : Butts v. Armor, 164 Pa. 73 ; Shaver v. McCarthy, 110 Pa. 339 ; Newhard v. Yundt, 132 Pa. 324 ; Foster's App., 87 Pa. 67 ; Gardner's Est., 164 Pa. 420 ; Simrell's Est., 154 Pa. 604 ; Deaves's Est., 140 Pa. 242.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1906 :
In this case the register of wills of Allegheny county sent his precept to the court below commanding it to frame an issue to determine the following questions of fact : 1. Did James Tolhurst on or about the — day of March, A. D. 1900, sign a paper writing as and for his last will and testament, substantially in the form of exhibit " A," hereto attached ? 2. Did the

said paper writing remain unrevoked by the testator, James Tolhurst, until his death ?    Exhibit " A " attached to the precept purports to be a copy of the last will of James Tolhurst, witnessed by Charles A. Stewart and Tula Naser, in which the testator directs his debts to be paid, his body to be buried in Allegheny cemetery and tombstones placed at his grave, and then " bequeaths to Eliza Michell all my estate, real, personal and mixed, absolutely." Joseph Mitchell is appointed executor.

On the trial of the issue framed in pursuance of the precept, the learned judge, being of opinion that the evidence was sufficient, submitted both questions to the jury who answered both in the affirmative.    Judgment was entered on the verdict and the defendants have appealed.

It appears that James Tolhurst lived for many years in the seventeenth ward of the city of Pittsburg and died there November 19, 1901, a widower and without children.    His nearest relatives were cousins.    At his wife's death in 1897 or 1898, Eliza Michell, the plaintiff, and her husband removed to Tolhurst's home and she remained there until a short time prior to his death, when she removed to another house.    During the occupancy of his house by the Michells, Tolhurst remained with them, paying board to Mrs. Michell and she paying him rent for the premises.    Joseph Mitchell, named as executor in the alleged will, was the alderman of the ward in which the parties resided.    He wrote at least four wills for Tolhurst and probably more.    The evidence shows that he wrote and kept in his possession in his office the wills of many people of that community.    He died August 11, 1903.    Letters of administration were granted on Tolhurst's estate and at the audit of the administrator's account before the orphans' court of Allegheny county in March, 1903, Mrs. Michell presented for allowance a claim against the estate for $1,001.60 for services in attending Mrs. Tolhurst in her last illness, for boarding Tolhurst, etc.    The claim was rejected by the auditing judge, whereupon, in May, 1903, Mrs. Michell presented her petition to the orphans' court praying for a rehearing, in which she avers that "she has come into possession of after-discovered evidence which she is informed and believes is very important in substantiating her claim and to show that the decedent,

James Tolhurst, intended to recompense her for services rendered by testamentary provision in his will; . . . . that it was testified by Squire Mitchell that the decedent made several wills in which your petitioner was the principal devisee, and that shortly before his death those wills were destroyed by his orders; " and then avers that Tolhurst made a nuncupative will about November 15, 1901, in which she was the principal beneficiary. An answer was filed and the matter has not yet been disposed of by the court.

On January 21, 1905, Mrs. Michell presented her petition to the register of wills of Allegheny county asking for the probate of an alleged will of James Tolhurst, a copy of which was thereto attached, and averring that the will was destroyed during the lifetime of Tolhurst by Joseph Mitchell, "but not in the presence of the testator and by his express direction." The defendants, the heirs-at-law of Tolhurst, objected to the probate of the will, alleging "that the writing was never executed by the said James Tolhurst, or if it was that the same was revoked by him during his lifetime." The register then certified to the common pleas the issue referred to above.

To justify the verdict, the jury was required to find, on sufficient evidence, (1) the due execution of the alleged will by the testator; (2) its contents substantially as set forth in the copy attached to the precept as exhibit " A," and (3) that the instrument was unrevoked at the death of the testator.

1. The sixth section of the Act of April 8, 1833, P. L. 249, 2 Purd. 2102, provides that in all cases a will "shall be proved by the oaths or affirmations of two or more competent witnesses, otherwise such will shall be of no effect." And the contents of a lost will or of a will which has been destroyed or canceled without the consent of the testator cannot be shown until its execution has been proved by the testimony of two witnesses: Hock v. Hock, 6 S. & R. 47; Foster's Appeal, 87 Pa. 67; Derr v. Greenawalt, 76 Pa. 239; Combs's Appeal, 105 Pa. 155; Simrell's Estate, 154 Pa. 604; McKenna v. McMichael, 189 Pa. 440. Has the plaintiff on whom the burden of proof rests shown by two witnesses the execution of the alleged will? Tula Naser and Charles A. Stewart, stenographer and clerk respectively in the office of Alderman Mitchell, are the witnesses

relied on to meet this essential requisite of the plaintiff's case. Miss Naser testifies that she wrote four wills for Tolhurst: one immediately prior to his going to a hospital in March, 1900, which he signed by his mark, one immediately after his return from the hospital, the will involved in this controversy, which was signed by the testator in the presence of herself and Stewart, and two subsequent unsigned wills. Assuming, without conceding, that Miss Naser, as one witness, has satisfactorily proven the execution of the will, an alleged copy of which accompanied the precept sent by the register to the court below, we must next inquire as to the sufficiency of Stewart's testimony to prove the execution of the instrument. He testified, inter alia, as follows: " Q. Did you ever witness any wills for Mr. Tolhurst in his lifetime ? A. Yes, sir. Q. I show you exhibit No. 1 (copy of alleged will) and ask you if you are the Charles A. Stewart, notary public, that swore Miss Naser to this paper? A. Yes, sir. Q. Did you examine that paper when you swore her? A. Yes, sir. Q. Do you remember witnessing a will for James Tolhurst at any time ? A. Yes, sir. Q. Do you remember when you witnessed the last will ? A. I don't mind just what time it was ; it was the last will ever he had for him. Q. Do you remember what year ? A. Right after he came from the hospital. Q. You are not sure of that ? A. No, sir. Q. Do you know whether it was spring or summer or fall ? A. It was in the summertime, I think. Q. How ? A. I don't mind just which now. Q. Did you see Mr. Tolhurst sign his name ? A. Yes, sir. Q. Who else witnessed it ? A. Miss Naser. Q. Did she do that at the request of Mr. Tolhurst ? A. Yes, sir. Q. In his presence ? A. Yes, sir. Q. Miss Naser signed in your presence ? A. Yes, sir. Q. Do you remember what was in that will, Mr. Stewart ? A. No, I couldn't tell you ; I heard him say he wanted to leave it to Mrs. Michell. Q. You heard him dictate the will ? A. Well, I was in and out all the time ; I know he was dictating a will of James Tolhurst to Miss Naser. Q. You, as I understand, did not read the will over ? A. No, sir, I didn't. Q. Do you know who was appointed executor under the will ? A. No, sir." Stewart further says that he heard Mitchell dictate to Miss Naser three or four wills for Tolhurst, but he witnessed only one ; and also that

$200 were bequeathed to some person other than Mrs. Michell in the will which he witnessed.

From this testimony it is apparent, we think, that Stewart fails to identify exhibit ". A " as a copy of the will which he attested with his signature. He was not asked that question, it will be observed, nor did he testify that the paper referred to was a copy of the will which he witnessed. He says the will he attested was written and signed after Tolhurst left the hospital, but he does not fix the year and is uncertain as to whether it was in the spring, summer or fall. Miss Naser testifies that the original or exhibit " A " was written and signed immediately after Tolhurst left the hospital, but is this the will which Stewart testifies he attested as a subscribing witness ? In exhibit " A " the day of the month is blank and the paper being a copy and not the original, Stewart did not and could not identify his signature from the writing nor the paper from its date. Neither does he identify exhibit " A " by its contents as being a copy of the paper he witnessed. He testifies he did not know who was appointed executor in the will. He did not read the will and does not say he heard the will dictated or read. The most he does say is that he knew Mitchell " was dictating a will of James Tolhurst to Miss Naser." He does not testify that Mrs. Michell was the beneficiary in the will he witnessed, but that he " heard him (Tolhurst) say he wanted to leave it to Mrs. Michell." It therefore conclusively appears that Stewart did not know the contents of the paper which he says he signed as a witness and, as the copy of the paper is not dated and the original had been destroyed, it necessarily follows that he could not identify exhibit " A " as a copy of the will he saw Tolhurst sign and which he attested as a subscribing witness. Moreover, his testimony not only fails to identify exhibit " A " as a copy of the will he witnessed but tends to show the contrary. In that paper it will be observed that Mrs. Michell is the sole devisee and legatee of " all my estate, real, personal and mixed absolute." Stewart testifies, however, that in the will he witnessed Mrs. Michell was the " sole heir except $200, he (Tolhurst) said, for a niece, I mind that ; I know there was $200 mentioned for somebody ; I don't know who it was for." This testimony conclusively shows that the will which Stewart wit-

nessed is not the paper presented for probate as the last will of Tolhurst.

Failure to identify the will produced defeated its probate in Hock v. Hock, 6 S. & R. 47. In that case GIBSON, J., delivering the opinion, says: "Taking for granted, then, that Charrington's evidence was sufficient on his part, was there complete proof by Rodernel, and had his evidence any necessary connection with the supposed will?" Charrington drew the will and suggested to the testator that he get Rodernel also to witness it. The testator said Rodernel was busy with his hay and he would postpone seeing him for a few days. Rodernel testified that the testator came to him the same summer, where he was making hay, and said Charrington had drawn his will and requested witness to go with him and sign it as a witness. Rodernel said it did not suit him to go and the testator replied that it would do at another time. Commenting on this testimony, Justice GIBSON says: "This is all the material evidence. The defect in it is, there is nothing to show that the declarations of the testator referred to the will produced. Charrington may, for anything that appears, have drawn more than one will. Take it, that he swears that he drew but one (and without this, the declarations of the testator can in no way be connected with the supposed will), still that part of the case would depend on the evidence of but one witness. Strike out Charrington's evidence and how will the case stand? . . . . Nor should the case, as contended, have been left to the jury to enable them to draw possible inferences and conclusions from facts indubitably proved; the jury would have, doubtless, believed the whole matter on the credit of Charrington alone; but where there is not such proof as the law exacts, the court is bound to direct the jury, be their belief what it may, to find against the party failing. If the testator, in his conversation with Rodernel, had mentioned the substance of the contents of his will; or if it had been shown to have been found among his papers at his death, there would have been at least a circumstance to leave to the jury for the purpose of connecting his declarations with the paper in question; but, as the evidence stood, there was nothing." This case is followed and approved in Derr v. Greenawalt, 76 Pa. 239.

The language of the court in the Hock case is very apposite

here.   If we strike out the testimony of Miss Naser, Stewart's testimony would be wholly insufficient to identify exhibit " A " as a copy of the will he signed as attesting witness.   Not having the original paper before him and not knowing its contents by reading it or having heard it read, all that he possibly could testify to is that he with Miss Naser witnessed a will signed by Tolhurst prepared in Mitchell's office in the spring or summer of 1900.   It is true Stewart said he signed but one will and Miss Naser said exhibit " A " is a copy of the will that both signed, but, as in the Hock case, she alone can identify exhibit " A " as the paper signed by both, and that is not sufficient.

The contents of the alleged will were not shown by clear and satisfactory evidence.   The copy furnished by Miss Naser and attached to the pleadings shows that the will was made in March, 1900, but she being interrogated as to the date testified that she would not say that Tolhurst signed it in March nor in the year 1900.   The most she would say was that he signed it after he came out of the hospital.   She testifies that the writing was destroyed about a week or ten days before Tolhurst died in November, 1901.   In February, 1905, more than three years after she could have seen the paper, she says she went to the office of plaintiff's counsel and gave him the contents of the will as it appears in the copy attached to the pleadings.   She had no data or written memoranda of the contents of the will, nor has she disclosed any reason why she should charge her memory with the different provisions of the will.   She testified that, as stenographer, she wrote many wills for Alderman Mitchell, and it does not appear that in another single instance she can recall the contents of the instrument.   She says she used the same form in writing all the wills, and assigns that as a reason why, after such great lapse of time, she can give from memory the contents of Tolhurst's will.   But that reason is by no means satisfactory.   That might do as to the beginning and conclusion of the will.   She does not claim that she had a written form for the wills she wrote and that this copy, with the necessary changes, was taken from it.   The copy, if she is believed, was made from the form carried in her mind.   But it is manifest that the second and third paragraphs of the paper were not taken from any established form.   They

direct the place of Tolhurst's burial, the erection at his grave of a tombstone, which was to be a duplicate of his wife's, and contained the bequest to Mrs. Michell and the reason for it. These paragraphs were necessarily applicable only to this will and it is incredible that, notwithstanding the numerous wills which she says were written in Mitchell's office, Miss Naser could under the circumstances recall the substance of these paragraphs as well as the other portions of the will more than three years after she had seen the paper.

Aside from these discrediting facts, Miss Naser is contradicted by the testimony of witnesses as to other material points in the case. She is not corroborated by a single witness as to the alleged contents of the will. We do not overlook the testimony of the plaintiff's witnesses who testified that Tolhurst told them that Mrs. Michell was the beneficiary in his wills. That is not sufficient proof, without more, of the contents of the will in question, which was not specifically identified by any other witness than Miss Naser.

Assuming the existence of the will to have been established by the plaintiff, we are not convinced that the evidence was sufficiently clear and satisfactory to overcome the presumption that it was destroyed by the testator animo revocandi, supported, as it was, by the positive and direct testimony of the defendants' witnesses. In such cases, the evidence must be positive and sufficient to overcome both the presumption of revocation by the testator and the presumption of innocence on the part of a third person charged with destroying the will. 23 Am. & Eng. Ency. of Law (2d ed.), 147. The contention of the plaintiff is that Tolhurst called at Mitchell's office a week or ten days prior to his death and said he desired to make some changes in his will, which had remained in Mitchell's possession, and requested him to make a new will embodying the proposed changes; that the stenographer prepared another will but Tolhurst said he would call again and sign it and left the office, whereupon Mitchell tore the signature off the will and directed Miss Naser to destroy it, she protesting at the time against the destruction. This, in substance, is the testimony of Miss Naser. Stewart was called in corroboration. Immediately following that part of his testimony quoted above, he was interrogated as to his knowledge of the destruction of the will.

He says he was in the street and heard Miss Naser reproving Mitchell in the latter's office for tearing up the will. While he says it was the will he signed as a witness, yet his testimony clearly shows that his knowledge of the alleged fact is derived, not from seeing the paper or knowing its contents, but solely from having overheard a conversation in which a will was referred to as having been torn or destroyed. He admits that his only reason for saying that it was the will he signed was "because he heard them talking about it; they were talking about the will, and I suppose it was the will they were tearing up." As said by the learned judge in his charge, referring to Stewart's alleged corroboration of the destruction of the will: "There is no evidence from him (Stewart) as to what that paper (which was destroyed) was, and he does not attempt to tell us." When it is recalled that many wills were prepared and kept in that office and that, as observed above, Stewart had failed to identify exhibit "A" as a copy of the will he signed, it is apparent that Stewart furnishes no corroboration of Miss Naser's testimony that, on this occasion, Mitchell destroyed the will alleged to have been signed in March, 1900. And, as pointed out in the learned judge's charge, the testimony of Carter and Cox relative to the declaration of Mitchell as to the circumstances attending the destruction of the will, was uncertain and indefinite; so much so, that it cannot be regarded as a substantial corroboration of Miss Naser's testimony.

The presumption is that Tolhurst destroyed the will with the intention of revoking it. In aid of this presumption, the defendants introduced the testimony of Joseph Mitchell, for many years an alderman in the city of Pittsburg, and who, it is admitted, prepared the will and was its custodian. His testimony is direct and positive. He says that he prepared half a dozen wills for Tolhurst and that not more than a month or two before his death Tolhurst ordered him to destroy all of them, which he did at the same time in Tolhurst's presence. He further testifies that Tolhurst made no later will and left no writings in his possession. This testimony was given by Mitchell when he was called by Mrs. Michell as a witness to establish her claim against Tolhurst's estate in the orphans' court of Allegheny county. England, another of defendants' witnesses, testifies that, Mitchell having informed him prior to

the death of Tolhurst that he had written a will for the latter in which England was named as executor, he called on Mitchell the day after Tolhurst's funeral and inquired about the will, and was then informed by Mitchell that all of Tolhurst's wills had been destroyed. Mrs. McKenna, a relative of Tolhurst, testified that shortly after his death she inquired of Mitchell how Tolhurst's estate was left and was informed that, at his request, Mitchell had burned the will in the testator's presence. As will be recalled, Mrs. Michell left Tolhurst's house two or three weeks prior to his death and about the same time he also left the house and went to live with Mr. Cox. Mrs. Jennie Davis testifies that she had a conversation with Tolhurst at that time in which he said he had had a difference with Mrs. Michell, had destroyed his will and was going to board with Mr. Cox. Tolhurst also told her in this conversation that he intended to make another will in which the beneficiaries would be the boys of the Mystic Chain, the Odd Fellows' Home, and a friend. There is other evidence, which need not be referred to in detail, corroborative of the testator's revocation of the will, such as the averments in Mrs. Michell's petition for a rehearing of her disallowed claim in the orphans' court.

Having carefully read and considered the evidence in the case, we are all of opinion that it was not sufficient to justify the court in submitting it to the jury on either of the questions presented for their determination, and that, therefore, the court should have affirmed the defendants' point and withdrawn the case from the jury.

The judgment is reversed, and the court below is directed to enter judgment in favor of the defendants.