# Charles *et al versus* Huber *et al.*

1. Charles made a will devising land to two sons at a valuation ; it was witnessed by two witnesses. The will, when presented for probate, showed an erasure of the valuations and other valuations interlined. One of the witnesses having died, his writing was proved and the will admitted to probate by the register. In an issue on appeal, the will was admitted as primâ facie under the probate. The surviving witness testified that the alteration was made after the execution by direction of the testator, afterwards re-acknowledged before the same two witnesses ; the handwriting of the deceased witness was proved on the issue. *Held*, that the paper as offered was not proved as a will.

[Charles v. Huber.]

2. The evidence of the surviving witness contradicted the prima facies of the probate, and the altered will stood on the proof of but one witness, and was therefore unproved.

May 7th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Lancaster county*: Of May Term 1875, No. 94.

This was a feigned issue, in which Henry Charles and others were plaintiffs, and Benjamin Huber and others, defendants, entered October 13th 1873, to try the validity of a paper writing purporting to be the will of Henry Charles, deceased.

The paper was dated November 31st 1868, was signed by Henry Charles, with a seal, and witnessed by " W. Carpenter and A. E. Carpenter." It was admitted to probate by the register of wills on the 1st of September 1873, upon the ordinary testimony, of W. Carpenter, one of the subscribing witnesses, and proof of the handwriting of A. E. Carpenter (then deceased), the other subscribing witness; letters testamentary were on the same day issued to the plaintiffs, the executors named in the will. An appeal was taken October 13th 1873, from the decree of the register, in pursuance of which this issue was framed. The issue was tried February 11th 1875, before Livingston, P. J.

The plaintiffs gave in evidence the paper writing.

After giving to his wife the interest of $6000, and otherwise providing for her, there were the following clauses, the erasures in which gave rise to the controversy :—

" My plantation or tract of land whereon I now live, in Pequea township, aforesaid, adjoining other land of mine and lands of Abraham Hess, Amos Hess, ——— and others, containing about one hundred and forty acres, I direct to be divided into two equal parts, or as nearly equal in quantity of acres as may be; and I value that moiety, or part thereof, whereon the new buildings are, now in the occupancy of my son Michael, at the sum of one hundred ———[ERASURE]——— dollars per acre, and the other moiety or part thereof, with the old buildings, where I now live, at one hundred dollars per acre. And I give and devise either one of said moieties or purparts, with the appertenances which he shall select or choose to take or have, to my son Henry Charles, his heirs and assigns for ever, at the valuation aforesaid, and subject to the rights and privileges hereinbefore given to my wife during life; and also subject to giving my said wife, during life, at such times as she shall require it, one-half of all the firewood she shall need for her family use, delivered at her residence; and the other moiety or purpart, with the appertenances, I give and devise to my son Michael Charles, his heirs and assigns for ever, at the valuation aforesaid, and subject to giving to my said wife, during life, at such times as she shall require it,. one-half of all the

28 P. F. SMITH—29

[Charles *v.* Huber.]

fire-wood she shall need for her family use, delivered at her residence.

"My messuage or tenement and tract of about forty acres of land, in Pequea township, as aforesaid, adjoining my other land, and which I purchased from John Herman, with the appertenances, I give and devise to my son, Jacob Charles, his heirs and assigns for ever, at the valuation of one hundred ——[ERASURE]—— dollars per acre." New valuations were written over the erasures.

Then followed directions to the three sons, Henry, Michael and Jacob, to pay "and account to my estate for the amount of the valuations of my estate hereinbefore devised to them," the valuation, except the $6000, which was to be invested for the use of his wife, to be paid to certain of his children in the amounts specified. The residue of his estate was to be divided in equal shares amongst nine children, including Harry, Michael and Jacob; he excluded from this distribution two children, on the ground that they had inherited their mother's estate.

The plaintiffs then rested.

The defendants read the deposition of William Carpenter, one of the subscribing witnesses to the will. He testified that the paper was written by him, and that he saw Henry Charles sign it on the day of its date. "There was an alteration made in two places in the valuation of the real estate devised to his sons; * * the valuations were higher than they are now; the one was $25 or $35 higher, I think, and the other $30 or $35, to the best of my recollection. I think there were two words in each case, where there are erasures, and ink lines drawn over them. Although uncertain as to the amounts that they were, I am certain that they were higher than they now are, in those two devises, at the time the will was signed than they now appear upon the face of the paper. These alterations were made before the death of my son Albert, which occurred in December, 1871; I think these alterations were made in the summer of 1871, in my office, by me, while he was sitting by my side; I do not think that any other person was in my office at the time. After the alterations were made Mr. Charles acknowledged the will in the presence of my son Albert and myself; at the time Mr. Charles signed his will my son Albert and I signed it as witnesses; my son Albert is dead, and this is his signature to the will; after the date of the will, during the lifetime of my son, Mr. Charles came to my office and requested me to make these alterations. After the alterations were made, as he wished them, he acknowledged the will in my presence and in the presence of my son Albert; he preferred these alterations in the place of making a codicil."

The plaintiffs then proved by W. W. Brown, Esq., who said he knew the handwriting of A. E. Carpenter, that his name as a subscribing witness to the will was A. E. Carpenter's handwriting.

[Charles v. Huber.]

The plaintiffs requested the court to instruct the jury to find for them, because :—

1. The will and alterations were sufficiently proven.

2. If the will with the alterations was not sufficiently proven the will must stand without the alterations, because alteration is not revocation.

The court directed the jury to find for the defendants which was accordingly done.

The plaintiffs took a writ of error and assigned for error the instructions of the court.

*S. H. Reynolds* and *D. G. Ellmaker*, for plaintiffs in error.— The will and alterations were sufficiently proven. A republication of a will may be proved by parol : Havard v. Davis, 2 Binn. 406 ; Jones v. Hartley, 2 Whart. 103 ; Wallace v. Blair, 1 Grant 75. Where the witness has died, proof of his handwriting is primâ facie evidence of his attestation in due form : 1 Redfield on Wills 242, § 20 ; Nickerson v. Buch, 12 Cush. 332 ; Hays v. Harden, 6 Barr 409, 412 ; Greenough v. Greenough, 1 Jones 489 ; Vernon v. Kirk, 6 Casey 218. Where interlineations, &c., are made in a will, and no mention is made of them at the time of execution they will be presumed to have been made, prior to execution : Wikoff's Appeal, 3 Harris 281. If alterations are not proved the will stands as originally made : Act of April 8th 1833, sect. 13, Pamph. L. 249, 2 Br. Purd. 1476, pl. 16 ; Heise v. Heise, 7 Casey 246. A direction that the will shall be destroyed, which is not fulfilled, will not be a revocation : Andrews v. Motley, 12 C. B. N. S. 513 ; Runkle v. Gates, 11 Ind. 95 ; Kent v. Mehaffy, 10 Ohio (N. S.) 204 ; Clingan v. Mitcheltree, 7 Casey 25 ; Dixon's Appeal, 5 P. F. Smith 424 ; Jackson v. Halloway, 7 Johns. 394 ; Short v. Smith, 4 East 419 ; Locke v. James, 11 M. & W. 901 ; Doane v. Haddock, 42 Mass. 72 ; Laughton v. Atkins, 1 Pick. 535.

*O. J. Dickey* and *N. Lightner*, for defendants in error, cited Hock v. Hock, 6 S. & R. 47 ; Derr v. Greenawalt, 26 P. F. Smith 239 ; Musser v. Curry, 3 W. C. C. R. 481.

Judgment was entered in the Supreme Court, May 17th 1875,

PER CURIAM.—The paper admitted to probate was the altered will. It was proved by two witnesses only. When one of the subscribing witnesses testified, on the trial of the issue *devisavit vel non*, that the paper thus admitted on the primâ facie proof, was altered after he subscribed the will, he contradicted the primâ facie evidence of the probate, which left the altered paper unproved, and standing on the testimony of the other subscribing witness only, who was dead. The altered will was therefore without proof. The will as it stood before alteration was not proved, for

[Charles *v.* Huber.]

the deceased subscribing witness had not proved the will as it had originally stood, but proved it only in its altered state, which left the original text proved by a single witness only. Then, the alteration being proved by a single witness only, the paper in neither form was legally proved. The consequence is that the paper fell as a will.                                    Judgment affirmed.