## Simrell's Estate.　Simrell's Appeal.

[Marked to be reported.]

*Will—Probate—Witnesses—Erasures.*

Proof of execution of a will must be made by two witnesses, each of whom must separately depose as to all facts necessary to complete the chain of evidence, so that no link of it may depend upon the credibility of one.

After a will was executed and attested, the daughter of testatrix made some material erasures in it. The daughter testified that she herself proposed the erasures, but that her mother desired them. The subscribing witnesses testified that the will did not have the erasures in it when they attested it. There was no republication or re-execution of the will after the erasures were made, and the daughter was the only witness who testified to the fact that the erasures were made by authority of testatrix. *Held*, that the statutory proof was lacking, and the will with the erasures in it could not stand as the will of testatrix, but that the will in its original state, without the erasures, was the valid will of testatrix.

Argued Feb. 20, 1893. Appeal, No. 94, July T., 1892, by M. B. Simrell, from decree of O. C. Lackawanna Co., admitting to probate a paper writing alleged to be the will of Phœbe Ann Simrell, deceased. Before GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal by M. Byron Simrell from probate of will.

The writing admitted to probate was as follows:

" The last Will and Testament of Phebe Ann Simrell.

" Whereas, I, being in good health and of sound mind, do declare this to be my last Will and Testament.

" If my Husband Walter Simrell should survive me, I will wish him to have his living and to be well taken care of *by my son Charles W. Simrell,* whom I desire to take charge of my property and to live on it until my husband's death. Six

months after his death I desire my property to be sold and to be equally divided between my children and my Grandson Frank D. Thomas whom I desire to share equally with the rest. *But if my son Charles, should not be living at that time,* I then desire that my husband should chose between any of my children *except my son Byron Simrell,* and the one that he desires to live with shall take charge of my property and live on it until my husband's death.

" But if I should survive my husband, Walter Simrell, at my death I desire the one that is living on my property to dwell thereon for six months after my death, at the expiration of which time I desire my property to be equally divided between each of my children that are living and my grandson Frank D. Thomas whom I desire to share equally with the rest, and I appoint Deodat Smith and Francis Miller to kindly act as my administrators and to this I add my signature

"PHŒBE ANN SIMRELL.

" Witness

" RUTH ARNOLD BARNEY

" FRANK D. THOMAS

" June 11th, 1880."

The parts of the paper printed in italics were erased. Other facts appear by the opinion of the Supreme Court.

The court, in an opinion by ARCHBALD, P. J., sustained the appeal to the extent of striking out the portions printed in italics, and placed one half the costs on appellant and one half on the estate.

*Errors assigned* were, (1) in refusing to strike off probate of will; (2) in correcting and modifying the will on the unsupported testimony of Louisa McDonald; (3) in declaring the will as thus corrected and modified to be the last will and testament of deceased; (4, 5) portions of opinion of court below; (6) in directing that appellant pay one half the costs.

*W. S. Hulslander, A. A. Vosburg* with him, for appellant.— The authority to make the erasures in the will was not legally established by the unsupported testimony of Louisa McDonald: Charles v. Huber, 78 Pa. 448.

Under the Married Women's Act of April 11, 1848, the will

of a married woman cannot be proved as the will of a person
sui juris, but must be executed in the presence of two compe-
tent witnesses: Camp v. Stark, 81* Pa. 235; Derr v. Greena-
walt, 76 Pa. 239; Charles v. Huber, 78 Pa. 448.

An alteration in a will made by a person claiming under it,
whether material or immaterial, renders it void: Jackson v.
Malin, 15 Johns. 293.

The alterations in the will having been made without a re-
signing or a re-acknowledgment of the instrument before the
witnesses, and there having been no execution of the will in its
altered form, the will in its altered form was not proved, and
it was error for the court to direct its probate in that form:
Dixon's Ap., 55 Pa. 424; Linnard's Ap., 93 Pa. 313.

Where the proof discloses enough to justify the production
of all the evidence offered in the orphans' court on the caveat,
all the costs of the proceedings in that court should be borne
by the estate: Frost v. Wheeler, 10 Cent. R. 889.

*R. A. Zimmerman*, *C. B. Gardner* with him, for appellees.—
Without any evidence at all as to who made the erasures, the
legal presumption would be that they were made by testatrix
herself: Baptist Church v. Robbarts, 2 Pa. 110.

When a pen is drawn through a part of a will only, a revo-
cation is effected pro tanto, and the other portions remain in
full force: Jarman on Wills, 291; Tomlinson's Est., 133 Pa.
245.

Where-the intention to cancel certain clauses in the will can
be ascertained from the act of the testatrix herself, such can-
cellation is sufficient to revoke such clauses: Linnard's Ap., 93
Pa. 313; Evans's Ap., 58 Pa. 238; Williams on Executors, 110.

Cases cited by appellant as to the effect of erasures in a will
after its execution, do not apply to this, because in those cited
the erasures were made without any authority of, and in the ab-
sence of testatrix: Derr v. Greenawalt, 76 Pa. 239; Jackson
v. Malin, 15 Johns. 293.

This is not a case in which the execution of the original or
altered will could not be proved by more than one witness, as
in Charles v. Huber, 78 Pa. 448.

The question of revocation pro tanto was not raised or passed
upon in Dixon's Ap., 55 Pa. 424.

OPINION BY MR. JUSTICE GREEN, May 8, 1893:

We are of opinion that our decisions in the two cases of Derr v. Greenawalt, 76 Pa. 239, and Charles v. Huber, 78 Pa. 448, control the determination of the present contention. In Derr v. Greenawalt the will was executed by the testator in the presence of the two attesting witnesses, with an unfilled blank left in it for the name of the residuary legatee. One witness testified that the name was afterwards inserted in the presence of the testator, and by his direction. The person who inserted the name testified that he wrote it, but could not recollect whether he did so at the direction of the testator, or in his presence. The will continued in the possession of the testator a long time after, and it was proved that subsequent declarations were made by the testator that the person named was his legatee. We held that these facts were insufficient to establish the residuary bequest. Mr. Justice SHARSWOOD, stating that there was no difficulty in regard to the rule applicable to the subject, quoted with approbation the language of Chief Justice GIBSON in Hock v. Hock, 6 S. & R. 47, as follows: " Proof of execution must be made by two witnesses, each of whom must separately depose as to all facts necessary to complete the chain of evidence, so that no link of it may depend on the credibility of but one. When the evidence is positive there can be no difficulty, for the witnesses then attest the simple fact of execution itself, but where the evidence of one or both is circumstantial, each must make proof complete in itself, so that, if the act of assembly were out of the question, the case would be well made out by the evidence of either. Circumstantial proof cannot therefore be made by two or more witnesses alternating with each other, as to the different parts of the aggregate of circumstances which are to make up the necessary sum of proof; the evidence of each not going to the whole."

The facts in Derr v. Greenawalt were that Mrs. Huber testified that her son George Rise wrote the name in the blank in the presence of the testator, and by his express direction, but George Rise was unable to testify that he wrote the name in the blank in the presence of the testator or by his direction, though he said that he did write the name. There was, therefore, but the testimony of one witness as to the essential fact that the name was inserted in the testator's presence and by his authority.

In the present case there was the positive testimony of Mrs. McDonald that she herself made the erasures after the will was executed and attested, and that she and the testatrix were alone when it was done. She said she herself proposed the erasures, but that her mother, the testatrix, wished it done. The subscribing witnesses testified that the will did not have the erasures in it when they attested it. There was no republication or re-execution of the will after the erasures were made, and there is but one witness who testifies to the fact of the erasures being made by authority of the testatrix. It is impossible to presume either that the erasures were made before execution, or that they were made by the executrix, because the positive and uncontradicted testimony is that they were made after execution and not by the testatrix herself. The statutory proof is therefore lacking and the will with the erasures in it cannot stand as the will of the testatrix.

In the case of Charles v. Huber, supra, the testator made a will devising land to his two sons at a valuation. It was attested by two witnesses. When presented for probate the will showed an erasure of the valuations and other valuations interlined. One of the witnesses having died, his writing was proved and the will admitted to probate. In an issue on appeal the surviving witness testified that the alteration was made after the execution, by direction of the testator, afterwards reacknowledged before the same two witnesses; the handwriting of the deceased witness was proved on the trial of the issue. It was held that the paper as altered was not proved as a will. In the opinion, this court said: " The will as it stood before alteration was not proved, for the deceased subscribing witness had not proved the will as it had originally stood, but proved it only in its altered state, which left the original text proved by a single witness only. Then the alteration being proved by a single witness only, the paper in neither form was legally proved. The consequence is that the paper fell as a will."

Both of the cases cited go much further in the direction of the invalidity of the wills in question than it is necessary to go in the present case. At the utmost, under the testimony, the alteration was made by one who was not a subscribing witness, by authority of the testatrix. Both of the subscribing witnesses were examined and one of them said the erasures were

not in when he signed as a witness, and the other did not know. But Mrs. McDonald testified that she was present when the will was executed and saw the testatrix and the attesting witnesses sign, and that the erasures were made by her after that time and within a few days before the death of the testatrix. There was no pretence of republication or acknowledgment, and the proof of the will in its altered state depends only upon the testimony of one witness. Under all the authorities such a will cannot stand.

As the will in its original state, without the erasures, was fully proved by the oaths of the two subscribing witnesses, it follows that it was the last will and testament of the testatrix, and in that condition, and as such it must be admitted to probate.

The order of the court below is reversed, and it is ordered and decreed that the paper writing purporting to be the last will and testament of Phœbe Ann Simrell, as it was in its original state before any of the erasures therein were made, is her last will and testament, and should be admitted to probate as such, all the costs to be paid out of the estate of the testatrix. The record is remitted for further proceedings.